# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBYN HAYNES and
ERIC JACKSON,
*Plaintiffs,*

   v.

THE CITY OF DURHAM, N.C.;
MARK WENDELL BROWN, JR.;
DANNY REAVES; TIMOTHY
STANHOPE; LAWRENCE
VAN DE WATER; VINCENT
PEARSALL; and JERRY YOUNT,
*Defendants*

1:12-CV-1090

## COMPLAINT

## WITH JURY TRIAL DEMAND

Respectfully submitted by:

EKSTRAND & EKSTRAND LLP
811 Ninth Street, Second Floor
Durham, North Carolina 27705
Tel. (919) 416-4590
Fax (919) 416-4591
***Counsel for Plaintiffs***

# THE PARTIES

1.      PLAINTIFF ROBYN HAYNES is a citizen and resident of Durham County, North Carolina.

2.      PLAINTIFF ERIC JACKSON is an African-American citizen and resident of Durham County, North Carolina.

3.      DEFENDANT CITY OF DURHAM, NORTH CAROLINA, ("the City") is a municipality formed and existing under the laws of North Carolina. Upon information and belief, the City waived its immunity from civil liability pursuant to N.C. Gen. Stat. §160A-485 by purchasing liability insurance, participating in a local government risk-pooling scheme, and by creating a funded reserve, the terms of which provide coverage for the damages caused by the conduct alleged herein.  At all relevant times, the City operated the Durham Police Department and employed the individuals whose conduct caused the damages for which plaintiffs seek relief in this action.

4.      DEFENDANT MARK WENDELL BROWN, JR. is and was at all relevant times a citizen and resident of the State of North Carolina employed by the City in its Police Department.

5. DEFENDANT TIMOTHY STANHOPE is and was at all relevant times a citizen and resident of the State of North Carolina employed by the City in its Police Department.

6. DEFENDANT DANNY REAVES is and was at all relevant times a citizen and resident of the State of North Carolina employed by the City in its Police Department.

7. DEFENDANT LAWRENCE VAN DE WATER is and was at all relevant times a citizen and resident of the State of North Carolina employed by the City in its Police Department.

8. DEFENDANT VINCENT PEARSALL is and was at all relevant times a citizen and resident of the State of North Carolina employed by the City as a Corporal in its Police Department. In that capacity, Cpl. Pearsall had supervisory authority over Defendants Brown, Stanhope, Reaves, and Van de Water.

9. DEFENDANT JERRY YOUNT is a citizen and resident of the State of North Carolina and was, at all relevant times, employed by the City as a Lieutenant in its Police Department. In that capacity, Lieutenant Yount had supervisory authority over officers Pearsall, Reaves, Stanhope, and Van de Water.

10.    THE CITY SUPERVISORS are the individuals employed by the City as supervisors of the individual defendants named in this action.  The City Supervisors are sued solely in their official capacities.

## JURISDICTION AND VENUE

11.    This action arises under the fourth and fourteenth amendments to the United States Constitution; Article I of the North Carolina Constitution; 42 U.S.C. §1983; 42 U.S.C. §1985; 42 U.S.C. §1986; 42 U.S.C. §1988; and the common law of North Carolina.

12.    This Court has original subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because they arise under the constitution and laws of the United States.

13.    This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy that gives rise to Plaintiffs' federal claims.

14.    Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. §§1391(b)(1), (2), and (3), because most or all of the Defendants reside, are employed, and may be found in the Middle District of North Carolina and the events giving rise to these claims occurred within the Middle District of North Carolina.

## FACTS

15.    On the morning of Thursday, October 8, 2009, Plaintiff Eric Jackson ("Jackson") drove from a nearby gas station to his home at 1401 Cherrycrest Drive in Durham, North Carolina to pick up his daughter and take her to a doctor's appointment that morning.

16.    Jackson was driving a car that Plaintiff Robyn Haynes ("Haynes") had loaned to him.

17.    Mr. Jackson parked his car at his home, and, as he was walking towards his front door, Officer Mark Wendell Brown, Jr. drove his patrol car down the street at a high speed and abruptly stopped in front of Jackson's home.

18.    Officer Brown ordered Jackson to get back into his car.

19.    Jackson did so, and cooperated with Brown's demands, including producing his drivers' license and proof that the car was registered to Haynes.

20.    Jackson advised Brown that his daughter had a doctor's appointment, and asked Brown why he was being detained. Brown refused to answer.

21.    Soon thereafter, Corporal Pearsall arrived at Jackson's home to assist and supervise Brown.

22.     Pearsall and Brown spoke about Jackson and Pearsall told Brown, "I don't know him."

23.     Pearsall then instructed dispatch to direct a K-9 unit to Jackson's home.

24.     The K-9 unit searched in and around Jackson's vehicle, Jackson himself, and all around the exterior and curtilage of Jackson's house.

25.     The K-9 unit did not alight upon anything relating to Jackson's vehicle, his home, or Jackson himself, and left the area soon thereafter.

26.     Brown continued to detain Jackson.

27.     At 10:54 a.m., approximately an hour after the K-9 unit found no evidence of any crime and left the scene, Brown handed a citation to Jackson charging him with an infraction (*i.e.*, violation of G.S. § 20-140.3(3) for driving over the line separating travel lanes on a dual-lane road).

28.     Throughout the relevant period, Jackson did nothing to violate G.S. § 20-140.3, and Brown did not have probable cause or reasonable suspicion to believe that Jackson did so.

29.     Jackson took Brown's citation and entered his home.

30.     The police officers did not leave; approximately 45 minutes later, they were still outside of Jackson's home.

31.     Shortly after noon, Jackson walked out of his house with his daughter to take her to her doctor's appointment, which Jackson was able to reschedule for that afternoon.

32.     On his way out, Jackson took the family's garbage can to the curb for the next day's pick-up.

33.     As Jackson got into his car, Brown and several other Durham police officers moved their patrol cars into a circular formation completely blocking Jackson's vehicle in his own driveway.

34.     Brown then began searching through the trash that Jackson had just taken to the curb.

35.     Brown found no evidence of a crime in any of Jackson's trash.

36.     Brown advised his supervisor on the scene, Defendant Pearsall that he found no evidence of a crime, but that he did find a cigar butt. Brown then left to apply for a warrant based on the cigar butt found in Jackson's trash.

37.     While Brown was preparing an application for a warrant, other City police officers refused to let Jackson leave to take his daughter to her doctor's appointment, and Officer Van de Water guarded the front door to Jackson's home, which Defendant Pearsall's directed him to do.

38.     Pearsall then shouted, "Lock it down!" and the remaining Durham police officers moved to the front of the house where they remained until Brown returned.

39.     Jackson used his cell phone to call 911. He reported the conduct of the police officers in front of his home.

40.     The Durham 911 operator advised Jackson dispatched police officers to his home, but none arrived.

41.     Jackson called 911 a second time roughly 15 minutes later.

42.     The Durham 911 operator told Jackson that an officer was en route to his home. This time, a Durham police officer appeared at Jackson's home. After speaking with the officers detaining Jackson, the responding officer knew that the officers were detaining Jackson and his family without probable cause or reasonable suspicion to do so. Yet, the responding officer failed intervene to prevent or aid in preventing the constitutional violations occurring in his presence, and left the scene.

43.     Jackson and his family decided to try to leave their house, the Durham police officers standing guard in front of his home seized Jackson, handcuffed him, and forced him to sit down on the front steps of his house.

44.     About 15 minutes later, Defendant Stanhope took Jackson to his patrol car, placed Jackson inside, turned the car's heater and music volume up to their maximum levels, and shut the door, locking Jackson inside, still handcuffed.

45.     The officers kept Jackson locked inside the vehicle and Brown returned with a warrant 2 hours later.

46.     Brown obtained the warrant by fabricating probable cause in an affidavit he presented to a judicial official, in which Brown made false statements and omitted facts material to the probable cause determination.

47.     No search warrant would have issued but for Brown's false statements and omissions of material facts.

48.     Jackson demanded a copy of the papers relating to the search warrant or an opportunity to read them, but the officers refused.

49.     Two Durham K-9 units arrived at Jackson's home, including the same K-9 unit that had searched Jackson's car, the curtilage of his house, and Jackson himself earlier. This time, both K-9 units searched Jackson's car, the curtilage of his house, and Jackson himself.

50.     Again, the K-9 units alighted to nothing, and their search produced no evidence of a crime.

51.     The K-9 units also searched inside of Jackson's home.

52.     Again, the K-9 units alighted to nothing, and their search produced no evidence of a crime.

53.     After the K-9 units failed to locate any evidence of a crime, the City police officers began disassembling Haynes' car, which was still parked in front of Jackson's home. For example, Defendant Stanhope removed the back seats from car, placed them on the driveway, and jumped up and down on them while watching neighborhood onlookers approach the scene.

54.     Defendant Brown and other officers conducted preliminary field tests for the presence of controlled substances on samples taken from Haynes' dismantled car. None of their field tests gave any indication of the presence of a controlled substance.

55.     Nevertheless, Defendant Brown seized the vents and other components of Haynes' car and property taken from Jackson's house, he claimed, for testing by the State Bureau of Investigation's lab.

56.     The testing conducted by the SBI Lab failed to indicate the presence of any controlled substance on any of Plaintiffs' property.

57.     All of the Defendants' searches and seizures of Plaintiffs and their property produced no evidence of a crime.

58.     Defendants then confronted Jackson, still handcuffed, and accused him of destroying the evidence that they could not find, and transported Jackson to the Durham County Jail, where Brown prepared criminal process charging Jackson with felony possession of cocaine, felony possession of heroin, and a traffic infraction.

59.     Defendants delivered the items they seized from Jackson, his home, and Haynes' car to the SBI's forensic lab with instructions to test them for the presence of controlled substances.

60.     The SBI Lab's testing failed to give any indication of the presence of a controlled substance on any of the articles Defendants seized from Jackson, his home, and Haynes' vehicle.

61.     Throughout the entire period of time described herein, Defendants lacked probable cause or reasonable suspicion to believe that Jackson had committed a crime or that evidence of any criminal activity would be found on Jackson's person, in his home, or in Haynes' car.

## SUPERVISORY AND MUNICIPAL LIABILITY

62.     At all times relevant to this action, Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount and the City Supervisors were all acting as agents and

employees of the City of Durham, within the course and scope of that agency and employment, and in furtherance of the City's interests.

63.     Upon information and belief, Yount and Pearsall participated in and expressly or tacitly approved, condoned, and ratified the violations of Plaintiffs' constitutional rights that their subordinates were committing in their presence. Subsequently, knowing of the violations of Plaintiffs' federally protected rights, the City Supervisors and officials with final policy-making authority for the City ratified the violations of Plaintiffs' constitutional rights.

64.     The City is therefore liable, jointly and severally with its co-defendants, for all of the damages alleged herein.

## DAMAGES

65.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs were deprived of their federally protected rights.

66.     As a direct and foreseeable result of those deprivations and Defendants' conduct Plaintiffs have and continue to suffer damages including public humiliation, shame, and stigmatization; emotional trauma; lost income; lost earning capacity; and other harms for which they are entitled to compensatory damages.

67.     As a consequence of those deprivations and Defendants' conduct, Plaintiffs have incurred significant expenses in connection with the repair of their property, securing a bondsman to post a release bond, and the preparation of Jackson's defense against the criminal charges that Defendants initiated against him without probable cause.

## CAUSES OF ACTION

### I.
### SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND CONSPIRACY (42 U.S.C. § 1983)

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, in their individual and official capacities.*

68.     Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

69.     At all times relevant to this cause of action, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount were "persons," as that term is used in 42 U.S.C. §1983, and were acting under color of state law.

70.     Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, individually and in concert, tacitly or expressly agreed to and, in fact, did unlawfully search and seize Jackson's person, Jackson's home, and

Haynes' car without a warrant, probable cause, reasonable suspicion, or any other legally sufficient justification.

71.     Subsequently, Defendant Brown, in furtherance of that unlawful agreement, prepared fabricated affidavit in which he made false statements and omitted facts material to the probable cause determination.  Brown presented the affidavit to a judicial official to obtain the warrant knowing that, but for the false statements and material omissions he made in his affidavit, no warrant would issue because there was, in fact, no probable cause, reasonable suspicion, or any other justification legally sufficient to support the warrant.

72.     As a direct and foreseeable consequence of their conduct in furtherance of their conspiracy, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount deprived Plaintiffs of their rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution.  As a foreseeable result of those deprivations of Plaintiffs' constitutional rights, Plaintiffs suffered the damages alleged herein.

## II.
## MALICIOUS PROSECUTION IN VIOLATION OF
## THE FOURTH AND FOURTEENTH AMENDMENTS
## AND CONSPIRACY (42 U.S.C. § 1983)

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount,*
*in their individual and official capacities.*

73.     Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

74.     At all times relevant to this cause of action, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount were "persons," as that term is used in 42 U.S.C. §1983, and were acting under color of state law.

75.     In furtherance of the conspiracy alleged above, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount initiated criminal proceedings against Jackson without probable cause, reasonable suspicion, or any other legally sufficient justification.

76.     Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount initiated the criminal proceedings against Jackson with malice and with deliberate indifference to Jackson's constitutional rights.

77.     The criminal proceedings terminated in Plaintiffs' favor.

78.     As a direct and foreseeable consequence of their conduct in furtherance of their conspiracy, Defendants Brown, Reaves, Stanhope, Van de

Water, Pearsall, and Yount deprived Jackson of rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution. As a foreseeable result of those deprivations of Plaintiffs' constitutional rights, Plaintiffs suffered the damages alleged herein.

## III.
## CONCEALMENT OF EVIDENCE
## AND CONSPIRACY (42 U.S.C. § 1983)

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, in their individual and official capacities.*

79.    Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

80.    At all times relevant to this cause of action, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount were "persons," as that term is used in 42 U.S.C. §1983, and were acting under color of state law.

81.    In furtherance of the conspiracy alleged above, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount initiated criminal proceedings against Jackson without probable cause, reasonable suspicion, or any other legally sufficient justification.

82.     Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount concealed from prosecutors facts showing that no crime occurred including, among other exculpatory facts, they concealed:

a.      that they found no cocaine, heroin, or any other controlled substance on Jackson's person, in Jackson's possession, in Jackson's home, in the curtilage of Jackson's home, or in Haynes' car.

b.      that, despite multiple efforts, the City's K-9 Units failed alight to any evidence of controlled substances on Jackson's person, in his possession, in his home, or in Haynes' car; and

c.      that they conducted field tests on the property they seized from Jackson, his home, and Haynes' car which failed to produce any indication of the presence of cocaine, heroin, or any other controlled substance; and

d.      that they had no evidence that Jackson had committed any crime at all.

83.     As a direct and foreseeable result their conduct in furtherance of their conspiracy, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount caused the deprivation of Plaintiffs' rights under the fourth and fourteenth amendments to the United States Constitution and the parallel

provisions of the North Carolina Constitution.  As a foreseeable result of those deprivations of Plaintiffs' constitutional rights, Plaintiffs suffered the damages alleged herein.

## IV.
## STANDBY OFFICER LIABILITY
### (42 U.S.C. § 1983)

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, in their individual and official capacities.*

84.     Plaintiffs incorporate all of the foregoing allegations by reference as though fully set forth here.

85.     At all times relevant to this cause of action, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount were "persons," as that term is used in 42 U.S.C. §1983, and were acting under color of state law.

86.     In furtherance of the tacit or express agreements alleged above, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount turned a blind eye and did nothing to prevent or aid in preventing the violations of Plaintiffs' constitutional rights that their fellow officers were committing in their presence.

87.     The constitutional violations occurred over a period of several hours and under circumstances entirely controlled by Defendants.

88. Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount had ample opportunity and authority to intervene to prevent or aid in preventing the constitutional violations occurring in their presence and the foreseeable harms that Plaintiffs suffered as a result.

89. In fact, when Brown showed his supervisor, Defendant Pearsall, that no evidence of controlled substances could be found in the trash that Jackson placed on the curb, Pearsall directed Brown to seek a warrant from a magistrate.

90. The failure of Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount to intervene to prevent or aid in preventing the constitutional violations occurring in their presence, Plaintiffs were deprived of their rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution.

91. As a foreseeable result of those deprivations of Plaintiffs' constitutional rights, Plaintiffs suffered the damages alleged herein.

## V.
## MUNICIPAL LIABILITY
### (42 U.S.C. §1983 and *Monell v. Department of Social Serv's of N.Y*)

*Against the City of Durham*

92.     Plaintiff incorporates the allegations made in paragraphs above.

93.     Defendant Pearsall, Yount, the City Supervisors, and the City are "persons" as that term is used in the text of 42 U.S.C. § 1983, and were acting under color of state law at all times relevant to this cause of action.

94.     Throughout the search and seizure and the malicious prosecution alleged herein, Yount and Pearsall were acting as the City officials with final policymaking authority for the City in connection with the decisions to search, seize, and detain Jackson's person and home and Haynes' vehicle without legal justification.

95.     While acting in that capacity, Yount and Pearsall directed, participated in, condoned, and subsequently ratified the conduct that caused the constitutional violations alleged above.

96.     Yount's and Pearsall's direction, participation in, and ratification of the searches and seizures of Jackson, Jackson's home, and Haynes' vehicle caused the deprivation of Plaintiffs' constitutional rights alleged herein and the harms that Plaintiffs foreseeably suffered as a result.

# VI.
## SUPEERVISORY LIABILITY (42 U.S.C. §1983)

*Against Yount and Pearsall in their individual and official capacities,*
*the City Supervisors in their official capacities, and the City.*

97.     Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

98.     Defendants Pearsall, Yount, the City Supervisors, and the City are "persons" as that term is used in 42 U.S.C. § 1983.

99.     Defendants Pearsall, Yount, and the City Supervisors failed to supervise the extended detention, search, and seizure of Jackson, Jackson's home, and Haynes' vehicle, and, as a result of that failure, Plaintiffs were deprived of their constitutional rights.

100.     During the course of the detention, search, and seizure of Jackson, Jackson's home, and Haynes' vehicle as well as the initiation and maintenance of criminal proceedings against Jackson without probable cause, Brown, Reaves, Stanhope, and Van de Water engaged in a number of investigative abuses, including unlawful searches and seizures, presenting fabricated probable cause in an affidavit to procure a warrant without probable cause, and concealment of exculpatory evidence from prosecutors.

101. Defendants Pearsall and Yount knew about those constitutional violations and abuses because they were occurring in their presence. Pearsall and Yount, took no meaningful preventative or remedial action. To the contrary, they directed, condoned, participated in, and ratified the constitutional violations and abuses their subordinates were committing in their presence.

102. The City Supervisors knew or should have known about those constitutional violations and abuses, and, after learning that they occurred in plain view of their fellow supervisors, Pearsall and Yount, took no meaningful preventative or remedial action. Rather, the City Supervisors condoned and ratified the constitutional violations.

103. Defendant Pearsall, Yount, and the City Supervisors failure to take meaningful preventative or remedial action, to train, control, or supervise Brown, Reaves, Stanhope, and Van de Water caused the deprivation of Plaintiffs' constitutional rights.

104. Prior to placing their subordinates in the roles they occupied during the search, seizure, and malicious prosecution alleged herein, Pearsall, Yount, and the City Supervisors evinced a reckless or callous indifference to the rights of potential criminal suspects by failing to provide Brown, Reaves,

Stanhope, and Van de Water with adequate training regarding the legal and constitutional limitations and dimensions of those roles.

105. Before giving Pearsall or Yount final policy making authority over the search, seizure, and malicious prosecution alleged herein, the City Supervisors evinced a reckless or callous indifference to the rights of potential criminal suspects by failing to provide Yount with adequate training regarding the legal and constitutional limitations and dimensions of the determinations he would be required to make and by failing to control or supervise Pearsall or Yount in performing that role.

106. Pearsall, Yount, and the City Supervisors thereby evinced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

107. As a direct and foreseeable consequence of the failure of Pearsall, Yount, and the City Supervisors to train and supervise Brown, Reaves, Stanhope, and Van de Water, Plaintiffs were deprived of their rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution.

108. As a direct and foreseeable consequence of these deprivations, Plaintiffs suffered the damages alleged herein.

# VII.
## CONSPIRACY (42 U.S.C. § 1983)

*Against Defendants Brown, Reaves, Stanhope, Van de Water,
Pearsall, and Yount their individual and official capacities, the City
Supervisors in their official capacities, and the City*

109.    Plaintiffs incorporate the foregoing allegations as though fully set forth here.

110.    Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City Supervisors are "persons," as that term is used in the text of 42 U.S.C. § 1983.

111.    Under color of state law, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City Supervisors conspired and entered into express or tacit agreements, understandings, or meetings of the minds among themselves to deprive Plaintiffs of their constitutional rights as alleged above.

112.    Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City Supervisors participated in this unlawful agreement by engaging in the conduct alleged herein with the intent to further the purposes of the conspiracy.

113.   As a direct and foreseeable consequence of their conduct in furtherance of their conspiracy, Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City Supervisors deprived Plaintiffs of their rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution.   As a foreseeable result of those deprivations of Plaintiffs' constitutional rights, Plaintiffs suffered the damages alleged herein.

VIII.
CONSPIRACY IN VIOLATION OF 42 U.S.C. §1985(2)
(Obstruction of Justice)

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount,*
*in their individual and official capacities, and the City.*

114.   Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

115.   Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City are "persons," as that term is used in 42 U.S.C. § 1985.

116.   Under color of state law, Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City conspired and entered into express or tacit agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course

of justice in the State of North Carolina and with the intent to deny Jackson equal protection of the laws.

117. Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City engaged in the overt acts alleged herein in furtherance of that conspiracy, and, in doing so, were motivated by invidious racial animus against Jackson, an African-American citizen.

118. By their conduct, Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City evinced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

119. As a direct and foreseeable consequence of their conspiracy, Plaintiffs were deprived of their rights under the fourth and fourteenth amendments to the United States Constitution and the parallel provisions of the North Carolina Constitution. As a foreseeable consequence of those deprivations, Plaintiffs suffered the damages alleged herein.

## IX.
## CONSPIRACY IN VIOLATION OF 42 U.S.C. §1986

*Against Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount,*
*in their individual and official capacities, and the City.*

120.    Plaintiff incorporates the foregoing allegations by reference as though fully set forth here.

121.    Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City of Durham are "persons," as that term is used in 42 U.S.C. § 1986.

122.    Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City of Durham had prior knowledge of the wrongs that they had conspired to commit, and had the power to prevent or aid in preventing those wrongs, which could have been prevented by reasonable diligence, but they neglected or refused to exercise such power.

123.    As a direct and proximate result of their neglect or refusal to exercise such power, Plaintiffs suffered the harms alleged herein.

124.    The neglect and refusal of Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall, Yount, and the City of Durham evince their reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

125.    As a direct and foreseeable result, Plaintiffs were deprived of their rights under the fourth and fourteenth amendments to the United States Constitution.  As a result of those deprivations, Plaintiffs suffered the damages alleged herein.

## X.
## COMMON LAW OBSTRUCTION OF JUSTICE AND CONSPIRACY

*Against Defendants Brown, Reaves, Stanhope, Van de Water, Pearsall,*
*Yount, in their individual and official capacities, and the City.*

126.    Plaintiff incorporates all of the foregoing allegations by reference as though fully set forth here.

127.    Brown, Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount attempted to and did, in fact, obstruct public and legal justice in the State of North Carolina.

128.    As alleged herein, Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, acting individually and in concert, instituted or participated in the initiation of criminal proceedings against Jackson without probable cause.  They agreed to accomplish this by fabricating probable cause and did, in fact, fabricate probable cause by manufacturing false and misleading

investigative reports, statements, and affidavits and presenting them to judicial officials and prosecutors while, at the same time, concealing from judicial officials and prosecutors the exculpatory evidence in their possession.

129.   Defendants engaged in this obstruction of public justice knowing that prosecutors and judicial officials would rely upon their false statements and material omissions to cause warrants authorizing further deprivations of Plaintiffs' constitutional rights and would cause criminal proceedings to be initiated against Jackson without probable cause.

130.   As a direct and proximate result their conduct in furtherance of their conspiracy to obstruct justice, Plaintiffs suffered the damages alleged herein.

## XI.
## COMMON LAW MALICIOUS PROSECUTION
## AND CONSPIRACY

*Against Defendants Brown, Reaves, Stanhope, Van de Water,*
*Pearsall, and Yount, in their individual and official capacities, and*
*the City.*

131.   Plaintiff incorporates by reference all of the preceding allegations as though fully set forth here.

132.   Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount, acting individually and in concert, instituted or participated in the institution of

criminal proceedings against Plaintiffs without probable cause by conspiring to fabricate and by fabricating probable cause by manufacturing false and misleading investigative reports, statements, and affidavits presented to judicial officials and prosecutors and concealing from judicial officials and prosecutors exculpatory evidence, knowing that prosecutors and judicial officials would rely upon their false statements and material omissions to cause warrants authorizing further deprivations of Plaintiffs' constitutional rights and would cause criminal proceedings to be initiated against Jackson without probable cause.

133.    The criminal proceedings were not supported by probable cause and terminated in Jackson's favor when the State of North Carolina voluntarily dismissed all of the charges Defendants initiated against Jackson.

134.    In instituting those proceedings, Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount acted with express, actual, and/or implied malice.

135.    Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount evinced their malice, spite, ill-will, and wanton disregard for Jackson's rights by conspiring to manufacture and by manufacturing false and misleading investigative reports, statements, and affidavits presented to judicial officials

and prosecutors, knowing that prosecutors and judicial officials would rely upon their false statements and material omissions to cause warrants authorizing further deprivations of Plaintiffs' constitutional rights and would cause criminal proceedings to be initiated against Jackson without probable cause.

136. As a direct and foreseeable consequence of Defendants' conduct, Jackson was unreasonably and unlawfully subjected to warrants authorizing his arrest and initiating criminal proceedings against him without probable cause.

137. As a direct and proximate result of the foregoing conduct, Jackson suffered all of the damages alleged herein.

## XII.
## NEGLIGENT SUPERVISION

*Against Yount and Pearsall in their individual and official capacities,*
*the City Supervisors in their official capacities, and the City*

138. Plaintiffs incorporate all of the foregoing allegations by reference as though fully set forth here.

139. Pearsall, Yount, and the City Supervisors owed Plaintiffs a duty to exercise due care in supervising his subordinates to avoid foreseeable harms to citizens like Plaintiffs

140. Pearsall, Yount and the City Supervisors breached that duty by failing to supervise Brown, Reaves, Stanhope, and Van de Water during the detention, search, and seizure of Jackson, Jackson's home, and Haynes' vehicle.

141. The City Supervisors breaches their duty by negligently supervising Yount and Pearsall during the events alleged herein.

142. The City Supervisors breached their duty by failing to provide Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount with proper training and supervision in the execution of rudimentary skills and determinations necessary to conducting a criminal investigation in a manner consistent with the rights guaranteed by the fourth and fourteenth amendments to the United States Constitution. By way of example, the City Supervisors failed to provide Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount with training or supervise their conduct in connection with:

> a. the appropriate chain of command in criminal investigations;
>
> b. preparing sworn affidavits to support applications for warrants authorizing the search or seizure of a person or property;
>
> c. the constitutional requirement to present exculpatory evidence to prosecutors;

d.      the constitutional prohibition against presenting to judicial officials affidavits containing false statements and material omissions to fabricate probable cause for the issuance of a warrant or criminal process when, in fact, no probable cause exists;

e.      the requirement of truthfulness and completeness in preparing reports, notes, and other materials that are incorporated into the investigative file that is presented to prosecutors;

f.      the probable cause standard;

g.      the reasonable suspicion standard;

h.      the factual and legal justification necessary to support the issuance of a warrant to search or seize a person or property;

i.      the factual and legal justification necessary to initiate criminal proceedings; and

j.      how to interpret the results of field tests Defendants employed to detect of the presence of a controlled substance on the property Defendants seized; and

k.      the constitutional requirement that they preserve test results that fail to give any indication for the presence of a controlled

substance (and the corollary constitutional prohibition against destroying such exculpatory results).

143.   As a direct and proximate result of the foregoing negligence, Plaintiff suffered the harms alleged herein.

## XII.
## VIOLATIONS OF THE NORTH CAROLINA CONSTITUTION AND CONSPIRACY

*Against the City of Durham, directly, based on the conduct of its employees acting in their official capacities.*

144.   Plaintiff incorporates by reference all of the preceding allegations as though fully set forth here.

145.   Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount engaged in the conduct alleged above while acting in the course and scope of their employment with the City and under color of state law.

146.   The conduct of Brown, Reaves, Stanhope, Van de Water, Yount, and Pearsall was motivated by malice, personal spite and ill will, and evinced their deliberate indifference to Plaintiff's rights under Article I, §§ 19 and 21 of the North Carolina Constitution.

147.   As a direct and proximate result, Plaintiff was deprived of rights guaranteed by Article I, §§ 19 and 21 of the North Carolina Constitution, and,

as a result of those deprivations of their state constitutional rights, Plaintiffs suffered the damages alleged herein.

148.   Plaintiffs plead this direct cause of action under the North Carolina Constitution in the alternative to ensure an adequate state law remedy is available to them in the event that their state law remedies are inadequate to compensate them for the deprivation of their state constitutional rights.

149.   To the extent that Plaintiffs' state law remedies are or become inadequate to compensate them for the harms caused by the state constitutional violations alleged herein, Plaintiffs hereby assert their right to proceed directly under the North Carolina Constitution to recover damages for the harms caused by the deprivation of Plaintiffs' state constitutional rights.


PUNITIVE DAMAGES

150.   The conduct giving rise to Plaintiffs' entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct of Brown, Reaves, Stanhope, Van de Water, Pearsall, and Yount.

151.   Plaintiffs therefore respectfully request an award of punitive damages in an amount to be determined by a jury.

## JURY TRIAL DEMAND

151.   Plaintiff demands a jury trial on all facts at issue in this action, except those issues for which Plaintiff is required by statute to waive a jury determination in order to preserve Defendants' waivers of immunity.

## **PRAYER FOR RELIEF**

152.   WHEREFORE, Plaintiff respectfully requests that this honorable Court enter a judgment awarding Plaintiffs:

      a.   Damages in an amount to be determined by a jury;

      b.   Pre-judgment interest;

      c.   Post-judgment interest;

      d.   Attorneys' fees as allowed by law;

      e.   The costs of this action; and

      f.   All other and further relief this Court deems just and proper.

Dated: October 7, 2012                    Respectfully submitted by:


                                          /s/ Robert Ekstrand
                                          Robert C. Ekstrand, N.C. Bar #26673
                                          Stefanie A. Smith, N.C. Bar #42345
                                          EKSTRAND & EKSTRAND LLP
                                          811 Ninth Street, Second Floor
                                          Durham, North Carolina 27705
                                          Tel. (919) 416-4590
                                          Fax (919) 416-4591
                                          RCE@ninthstreetlaw.com
                                          *Counsel for Plaintiffs*