IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBYN HAYNES; ERIC JACKSON,      )
                                 )
            Plaintiffs,          )
                                 )
        v.                       )
                                 )
CITY OF DURHAM, N.C.; MARK       )          1:12cv1090
WENDELL BROWN, JR.; DANNY        )
REAVES; TIMOTHY STANHOPE;        )
LAWRENCE VAN DE WATER; VINCENT   )
PEARSALL; JERRY YOUNT,           )
                                 )
            Defendants.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiffs Robyn Haynes and Eric Jackson bring suit against six Durham police officers – Mark Wendell Brown, Jr., Danny Reaves, Timothy Stanhope, Lawrence Van de Water, Vincent Pearsall, and Jerry Yount ("Officer Defendants") – and the City of Durham ("the City") for alleged violations of Plaintiffs' federal constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, as well as alleged violations of North Carolina law. Before the court is the Officer Defendants' motion to dismiss several of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 23.) For the reasons set forth below, the motion will be granted in part and denied in part.

# I.  BACKGROUND

The facts, viewed in the light most favorable to Plaintiffs, are as follows:

On the morning of October 8, 2009, Jackson borrowed Haynes' car and drove it from a gas station to his nearby home at 1401 Cherrycrest Drive in Durham, North Carolina.  (Doc. 1 ("Compl.") ¶¶ 15, 16.)  After Jackson parked the car and began walking toward his home, Officer Brown approached quickly in his patrol car and ordered Jackson back into his car.  (Id. ¶¶ 17-18.) Jackson complied and, upon Brown's request, produced his driver's license and Haynes' registration.  (Id. ¶ 19.)  Brown refused to tell Jackson why he was being detained.  (Id. ¶ 20.) Corporal Pearsall then arrived and spoke with Brown about Jackson, saying "I don't know him."  (Id. ¶¶ 21-22.)

Pearsall called for a K9 unit, which searched Jackson, his car, and the exterior of his house.  (Id. ¶¶ 23-24.)  The K9 did not alert to anything and was taken from the scene, but Brown continued to detain Jackson.  (Id. ¶¶ 25-26.)  At 10:54 a.m., approximately an hour after the K9 unit left, Brown issued Jackson a citation for driving over the line separating travel lanes on a two-lane road, in violation of N.C. Gen. Stat. § 20-140.3.  (Id. ¶ 27.)  Plaintiffs allege that Jackson did not commit that traffic infraction.  (Id. ¶ 28.)

Jackson took the citation from Brown and entered his home, but the officers stayed outside for another 45 minutes. (Id. ¶¶ 29-30.) Shortly after noon, Jackson left his house to take his daughter to a doctor's appointment. (Id. ¶ 31.) As he was leaving, he took a garbage can from his home to the curb. (Id. ¶ 32.) Jackson got in his car to leave, and Brown and several other Durham police officers[1] moved their vehicles to block Jackson's exit from his driveway. (Id. ¶ 33.) Brown then searched through the garbage Jackson had taken to the curb and found a cigar butt. (Id. ¶¶ 34-36.) Plaintiffs allege that Brown told Pearsall he had found no evidence of a crime, but that he had found a cigar butt. (Id. ¶ 36.) Brown left to get a warrant based on the cigar butt found in Jackson's trash. (Id.)

While Brown was away, the officers continued to prevent Jackson from leaving the premises. (Id. ¶ 37.) At some (unspecified) point, Jackson left his car and reentered his home. (Id. ¶ 43 (alleging that later "Jackson and his family decided to try to leave their home").) Pearsall directed Officer Van de Water to guard the front door, which he did, then Pearsall shouted "Lock it down!" and the remaining officers moved to the front of the house. (Id. ¶¶ 37-38.) The officers

---

[1] Plaintiffs do not identify the officers or indicate when they arrived.

stayed at the front of the house until Brown returned. (Id. ¶ 38.)

While inside his home, Jackson called 911 twice to report the officers' conduct. (Id. ¶¶ 39-41.) A responding officer arrived at Jackson's home and spoke with the other officers there. (Id. ¶ 42.) Plaintiffs allege that this (unidentified) officer knew the other officers had no probable cause or reasonable suspicion to detain Jackson and yet did not intervene. (Id.) The responding officer left the scene. (Id.)

When Jackson tried to leave the house, officers handcuffed him and had him sit on the front steps. (Id. ¶ 43.) About fifteen minutes later, Officer Stanhope put Jackson in his patrol car, turned up the heat and music volume to their maximum levels, and shut the door, locking in Jackson, who was still handcuffed. (Id. ¶ 44.) Two hours later, Brown returned with a warrant, which he allegedly obtained by "fabricating probable cause," making false statements, and omitting material facts. (Id. ¶¶ 45, 46.) Jackson asked to see the warrant, but the officers refused. (Id. ¶ 48.)

Two K9 units arrived and searched Jackson, his car, and the interior and exterior of his home, but they did not alert to anything. (Id. ¶¶ 49-52.) The officers then disassembled Haynes' car, which Jackson had been driving. (Id. ¶ 53.) Stanhope removed the back seats from the car, put them on the

4

driveway, and jumped up and down on them. (Id.) Brown and other officers tested parts of the car for controlled substances; those tests were negative. (Id. ¶ 54.) Brown seized the vents and other parts of Haynes' car for further testing. (Id. ¶ 55.) Some of the Defendants[2] accused Jackson of destroying evidence, and he was taken to the Durham County Jail for processing. (Id. ¶ 58.) He was charged with felony possession of cocaine, felony possession of heroin, and a traffic infraction. (Id.)

Plaintiffs allege that none of Defendants' searches and tests, including later forensic tests conducted by the North Carolina State Bureau of Investigation, revealed any trace of controlled substances. (Id. ¶¶ 56-57, 59-61.) Eventually, the State of North Carolina voluntarily dismissed all charges against Jackson. (Id. ¶ 133.)

Plaintiffs filed their complaint on October 7, 2012, asserting thirteen causes of action. The City answered. (Doc. 13.) The Officer Defendants now move to dismiss several of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 23, 24.) Plaintiffs have responded (Doc. 28), and the Officer Defendants have replied (Doc. 29). The motion is now ripe for consideration.

---

[2] The complaint does not specify which Officer Defendants accused Jackson.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).[3] A 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).

### B. Claims Against City Supervisors

Plaintiffs assert several claims against unnamed "City Supervisors" in their official capacities. (Compl. ¶¶ 97-113, 138-43.) They describe these "City Supervisors" as "the

---

[3] The Officer Defendants cite the "no set of facts" standard in addition to citing the "plausibility" standard of Iqbal. (Doc. 24 at 5-6.) The Supreme Court has characterized the "no set of facts" standard as "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 550 U.S. at 563.

individuals employed by the City as supervisors of the individual defendants named in this action." (Id. ¶ 10.) The Officer Defendants now move to dismiss the claims against these unidentified supervisors as duplicative, because they are being sued only in their official capacities, and the City is also being sued. (Doc. 24 at 10.) Plaintiffs appear to have abandoned their claims against the "City Supervisors"; they are not mentioned once in Plaintiffs' response. (Doc. 28.)

The claims against these "City Supervisors" in their official capacities are indeed duplicative of the claims against the City. See infra II.D. These individuals are also not identified in the complaint, not listed as party in the complaint's caption, and not served in the action. Moreover, Plaintiffs appear to have abandoned their claims against them. Therefore, the claims will be dismissed, but because it is unclear whether Plaintiffs can cure the pleading deficiency, the dismissal will be without prejudice.

### C. Claims Against Reaves and Yount

Reaves and Yount move to dismiss all claims against them on the grounds the complaint fails to state any specific wrongful action by either of them. (Doc. 24 at 7.) They contend that their mention in "broad recitations of the elements of numerous causes of action" and the general allegation of Yount's improper supervision are insufficient. (Id. at 7-8.) Plaintiffs respond

that both "[p]articipated in and [r]atified" the various violations alleged in the complaint. (Doc. 28 at 11.) They cite specific paragraphs of the complaint in support of this contention. (Id. at 11-13.)

Reaves and Yount are correct that, as to them, the complaint is short on facts and long on legal conclusions. Neither Defendant is mentioned in the complaint's "Facts" section. (Compl. ¶¶ 15-61.) Virtually every mention of them is limited to "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. The only *fact* alleged relating to them is that some or all of the events complained of occurred "in their presence." (Compl. ¶¶ 63, 101 (Yount only), 86 (Reaves and Yount).) Such factual allegations relate only to indirect theories of liability (id. ¶¶ 63, 101 (supervisory liability), 86 (bystander liability)) and are insufficient to support any cause of action based on direct acts, such as common-law malicious prosecution (id. ¶¶ 131-37) or § 1983 claims based on unlawful search and seizure (id. ¶¶ 68-72), malicious prosecution (id. ¶¶ 73-78), or concealment of evidence (id. ¶¶ 79-83).[4]

---

[4] Because acquiescence in this context can amount to a conspiracy agreement, Plaintiffs' allegations do sufficiently state a claim against Reaves and Yount for conspiracy under § 1983. See infra II.H. It is unnecessary to address Reaves and Yount specifically regarding the § 1985, § 1986, and common-law obstruction of justice claims, as those claims will be dismissed as to all the Officer Defendants. See infra II.I, II.J, II.K.

In their response, Plaintiffs seek to avoid this result by again reciting legal conclusions regarding what Reaves and Yount did (Doc. 28 at 11-13), but Plaintiffs have done no more than insert Reaves' and Yount's names into elements of causes of action. For example, Plaintiffs allege that

> . . . Yount and Reeves [sic] both tacitly or expressly agreed to and, in fact, did unlawfully search and seize Jackson's person, Jackson's home, and Haynes' car without a warrant, probable cause, reasonable suspicion, or any other legally sufficient justification[.] . . . Reaves and Yount initiated criminal proceedings against Jackson without probable cause, reasonable suspicion, or any other legally sufficient justification; . . . they acted with malice and deliberate indifference to Jackson's constitutional rights[.]

(Id. at 11-12.) Plaintiffs have the obligation of alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Plaintiffs' "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Therefore, all of the claims against Reaves and Yount premised on direct liability will be dismissed.

Because the Officer Defendants also challenge the claims against Reaves and Yount specifically for both indirect theories of liability – bystander and supervisory – the court will address the legal sufficiency of the complaint as to those claims infra. See infra II.F, II.G.

**D.   Official Capacity Claims**

The Officer Defendants move to dismiss Plaintiffs' claims against them in their official capacities as being duplicative of their claims against the City, as the City is the true party in interest. (Doc. 24 at 9-10.) Plaintiffs "do not object to dismissal of their official capacity federal law claims against the City's employees so long as the City is substituted for them or is already named as a defendant in those claims." (Doc. 28 at 13.) Thus, the claims against the Officer Defendants in their official capacities made in Counts I through IX will be dismissed.

Plaintiffs object to dismissal of their official capacity state-law claims, however, on that basis because they have been unable to find any authority for "extending the principles articulated in Kentucky v. Graham, 473 U.S. 579, 166 (1985)" to state-law claims. (Doc. 28 at 13-14.) Under North Carolina law, "a public officer sued in his official capacity is simply another way of suing the public entity of which the officer is an agent." Thompson v. Town of Dallas, 543 S.E.2d 901, 904 (N.C. Ct. App. 2001) (plaintiffs sued police officer in his individual and official capacities, as well as town that employed him). Because the City remains the real party in interest and Plaintiffs have sued the City on all their state-

law claims, those same claims against the Officer Defendants will be dismissed as duplicative.

### E.    Fourteenth Amendment

The Officer Defendants contend that Plaintiffs' claims arise under the Fourth Amendment and that the Fourteenth Amendment is not a recognized alternative basis for those claims; they argue that Fourteenth Amendment substantive due process should not guide the court's inquiry. (Doc. 24 at 10-11.)   Plaintiffs do not pursue a substantive due process analysis in response; instead, they state that the Fourteenth Amendment is included merely because it makes the Fourth Amendment applicable to the States. (Doc. 28 at 14-15.)

There is no substantive dispute here. It is clear from Plaintiffs' response that they do not intend to assert a substantive due process claim. They merely sought to style their Fourth Amendment claim correctly.

### F.    Section 1983 Bystander Liability

Reaves and Yount assert that the bystander claims against them should be dismissed because Plaintiffs have not pleaded sufficient facts to support the claims. (Doc. 24 at 12-13.) Brown moves to dismiss the bystander claim against him because Plaintiffs allege that he was a perpetrator of the wrongful acts and he "cannot then be held separately liable for failing to stop himself." (Id. at 11.)   Plaintiffs reiterate that they

11

have pleaded sufficient facts as to Reaves and Yount and argue that they may plead alternative theories of liability as to Brown. (Doc. 28 at 15-16.)

Under § 1983, a state actor may be liable if he "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 202 (4th Cir. 2002). However, officers may be liable for failing to act when there is a duty to act; bystander liability and supervisory liability are two such theories. Id. at 202-03.

Bystander liability "is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Id. at 203. An officer may be held liable when he "(1) knows that a fellow officer is violating an individual's constitutional rights[,] (2) has a reasonable opportunity to prevent the harm[,] and (3) chooses not to act." Id. at 204 (footnote omitted); see also Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 419-20 (4th Cir. 2014).

Plaintiffs allege that some or all of the events complained of occurred in Reaves' and Yount's presence. (Compl. ¶¶ 63, 86, 101.) It is unclear from the complaint exactly when Reaves or

Yount arrived; Brown was clearly the first officer on the scene (id. ¶ 17), Pearsall arrived soon after (id. ¶ 21), and at some unidentified point "other Durham police officers," including multiple K9 units, arrived and participated in or observed alleged wrongful acts (id. ¶¶ 24, 33, 49). Presumably Reaves and Yount are two of these "other officers." Although the complaint does not specify when they arrived, whether they observed any of the events, or whether they knew their fellow officers were acting unconstitutionally, the facts presented plausibly allege that Reaves and Yount were present in and around Jackson's home for at least some of the allegedly unconstitutional actions taken. A reasonable inference from the facts alleged is that Reaves and Yount saw at least the second K9 searches (id. ¶¶ 49-52) and saw that they did not alert to anything. It is therefore plausibly alleged that they knew the officers did not have probable cause to arrest Jackson, take Haynes' car apart, or seize parts of the car for further testing. It is also a reasonable inference that, given the fact that the alleged incidents took place over several hours and their proximity to the alleged incidents,[5] Reaves and Yount had a reasonable opportunity to prevent the harm. Therefore,

---

[5] Most of the incidents complained of occurred in Jackson's home and driveway and street immediately in front of his home. The only incident not occurring there is Brown's application for a warrant. The complaint does not indicate that anyone went with Brown.

Plaintiffs have alleged the minimum factual matter needed to allow bystander claims against Reaves and Yount to go forward.

As to Brown's bystander liability, the Officer Defendants assert that Plaintiffs have pleaded themselves out of court by alleging that Brown perpetrated the wrongful acts. (Doc. 24 at 11-12.) They insist that Brown cannot be liable for perpetrating wrongful acts and also liable for failing to stop himself. Without reaching Plaintiffs' assertion that they may plead alternative theories of liability, the court notes that the complaint alleges other incidents not perpetrated by Brown for which he may plausibly be liable as a bystander, such as wrongfully allowing the K9 units to search Jackson and his home and car, and wrongfully allowing "City police officers" to disassemble Haynes' car, including allowing Stanhope to jump up and down on the back seats of the car. Therefore, Brown's motion to dismiss the bystander claim against him will be denied at this time.

### G. Section 1983 Supervisory Liability

Yount contends that Plaintiffs have not alleged a sufficient "affirmative causal link" between his inaction and harm to the Plaintiffs to allow a supervisory claim under § 1983. (Doc. 24 at 13-14.) Plaintiffs respond that Yount "was aware of the constitutional violations of his subordinates [and] . . . was present when his subordinates engaged in them, yet did

nothing to prevent or aid in preventing them," and that by doing so, he "tacitly approved" the actions.  (Doc. 28 at 16.)

Plaintiffs' own description of Yount's actions (or inaction) does not align with a claim of supervisory liability; it aligns with a claim of bystander liability, which is already alleged against Yount.  As the Fourth Circuit has explained, "bystander and supervisory liability are each premised on omissions, but there are significant differences between them," and so the "analysis of them is separate and distinct." Randall, 302 F.3d at 203.

Supervisory liability "arises from the obligation of a supervisory law officer to [ensure] that his subordinates act within the law."  Id.  There are three necessary elements to a § 1983 supervisory claim:

> (1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) . . . there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted).  On the first prong, the subordinates' conduct "must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several

different occasions.'" Randall, 302 F.3d at 206 (quoting Shaw, 13 F.3d at 799). Regarding the second prong, the plaintiff ordinarily must plead more than "a single incident or isolated incidents" to sufficiently allege deliberate indifference. Id. (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)). Deliberate indifference in this context means "continued inaction in the face of documented widespread abuses." Id. (quoting Slakan, 737 F.2d at 373).

Nowhere do Plaintiffs allege a custom, trend, or pattern of unconstitutional actions taken by Yount's subordinates. In fact, they do not allege a single wrongful incident prior to October 8, 2009. Like the plaintiffs in Randall, they have alleged "a litany of constitutional violations, occurring roughly simultaneously," or over a short period of time (less than a day). Id. at 207. Such a litany is insufficient to demonstrate deliberate indifference and "contradicts the premise of supervisory liability." Id. Plaintiffs' allegations boil down to a bystander claim against a defendant who also happens to be a supervisor. That Yount is a supervisor makes no difference to the bystander inquiry; it also does not by itself create a claim for supervisory liability. Because Plaintiffs have failed to allege Yount's inaction in the face of widespread

abuses, the supervisory claim against Yount will be dismissed.[6]

## H. Conspiracy

The complaint asserts claims of conspiracy under § 1983 against the Officer Defendants in Counts I (search and seizure), II (malicious prosecution), and III (concealment of evidence), as well as a general claim of conspiracy under § 1983 in Count VII. (Compl. ¶¶ 68-83, 109-13.) The Officer Defendants seek to have Count VII dismissed as duplicative (Doc. 24 at 14-15); Plaintiffs do not respond (Doc. 28 at 13, 18).[7]

Count VII introduces no new claim against any of the Officer Defendants. All six Officer Defendants were previously named in Counts I, II, and III, which each states a conspiracy claim under § 1983. The supporting language of Count VII merely references constitutional injuries "as alleged above" (Compl. ¶ 111) and wrongful acts "alleged herein" (id. ¶ 112), without reference to anything not already part of Counts I, II, and III. Therefore, the claims in Count VII against the Officer Defendants will be dismissed as duplicative.

---

[6] Pearsall did not move to dismiss the supervisory liability claim against him.

[7] Plaintiffs address the argument that Count VII is duplicative only in the context of the claims against the Officer Defendants in their official capacities, conceding that such claims are duplicative of Plaintiffs' claims against the City in Count V. (Doc. 28 at 13.) They do not address the Officer Defendants' argument, which is that all of the claims against the Officer Defendants in Count VII – in both their individual and official capacities – should be dismissed because they are duplicative of Counts I, II, and III.

The Officer Defendants also argue that the complaint's "generalized, conclusory allegations" are insufficient to support a conspiracy claim and thus seek dismissal of all the conspiracy claims. (Doc. 24 at 15-16.) In response, Plaintiffs recite the factual allegations of the complaint that they believe support their conspiracy claims. (Doc. 28 at 17-18.)

To state a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, Plaintiffs must allege that the Officer Defendants (1) "acted jointly in concert" and (2) performed an overt act (3) "in furtherance of the conspiracy" that (4) resulted in the deprivation of a constitutional right. Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). "Acquiescence can amount to a conspiracy agreement when . . . one police officer watches an open breach of the law and does nothing to seek its prevention." Hafner, 983 F.2d at 578.

The complaint plausibly alleges that, at a minimum, the Officer Defendants were present at Jackson's home, saw that multiple K9 searches revealed no indication of controlled substances, and saw no indications of criminal activity, yet they searched and seized Jackson and the car and searched his home – or acquiesced in those actions. The allegedly unlawful searches and seizures took place in a relatively small area

(Jackson's home, driveway, and street immediately in front of his home) and over a short period of time (a matter of hours, not days or weeks). Given that proximity and the fact that acquiescence in the face of an alleged open breach of the law can amount to a conspiratorial agreement, Plaintiffs have plausibly alleged a conspiracy claim against the Officer Defendants for unlawful searches and seizures.

The complaint also alleges that immediately following the unsuccessful searches, and while the Officer Defendants were still present, a handcuffed Jackson was transported away in a patrol car to the jail, where Brown drew up the paperwork charging him with crimes. (Compl. ¶ 58.) One may reasonably infer at this early pleading stage that the Officer Defendants knew Brown's purpose in transporting Jackson and acted jointly in allowing Brown to initiate criminal proceedings against him.

The conspiracy to conceal evidence claim stands on a different footing, however. There are no factual allegations that the Officer Defendants ever agreed to conceal evidence or that they were present at and acquiesced in another Officer Defendant's concealment of evidence. The temporal and geographic proximity that made the first two conspiracy claims plausible is lacking here. Thus, this claim will be dismissed.

## I. Section 1985(2)

The Officer Defendants contend that Plaintiffs' conclusory

allegations of a racial animus against Jackson fail to state a § 1985 claim. (Doc. 24 at 16-17.) Plaintiffs argue that the cases on which the Officer Defendants rely are inapplicable because they do not relate to motions to dismiss; they reiterate that they have sufficiently alleged a racial animus. (Doc. 28 at 18-20.)

Section 1985(2) has two parts; the language of Plaintiffs' complaint relates to the second part. (Compl. ¶ 116 ("Under color of state law, [Defendants] conspired . . . for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the State of North Carolina and with the intent to deny Jackson the equal protection of the laws.").) See also Kush v. Rutledge, 460 U.S. 719, 724-25 (1983) ("The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts," while the first part relates to "federal judicial proceedings.")

To state a claim under the second part of § 1985(2), "'[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Kush, 460 U.S. at 725-26 (emphasis omitted) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Bloch v. Mountain Mission Sch., 846 F.2d 69 (4th Cir. 1988)

(unpublished) (observing that a racial animus is necessary for a violation of the first part of § 1985(3) and the second part of § 1985(2)).

The Officer Defendants cite <u>Simmons v. Poe</u>, 47 F.3d 1370, 1377 (4th Cir. 1995), and <u>Gooden v. Howard Cnty., Md.</u>, 954 F.2d 960, 970 (4th Cir. 1992), in support of their position that Plaintiffs' allegations are insufficient to support a § 1985(2) claim. <u>Simmons</u>, which involved a motion for summary judgment on a § 1985(3) claim,[8] did not reach the question of racial animus, finding instead that the plaintiffs had not established a conspiracy. 47 F.3d at 1376-78. In so holding, the Fourth Circuit said, "we have specifically rejected [§ 1985] claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." <u>Id.</u> at 1377. <u>Gooden</u>, which involved qualified immunity for a § 1985(3) claim,[9] dealt directly with the racial animus requirement. There, the *en banc* court stated that courts have "required that plaintiffs alleging unlawful [i.e., racial or class-based] intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." 954 F.2d at 969-70. The court

---

[8] Claims under the first part of § 1985(3) also require a racial or class-based animus. <u>See</u> <u>Kush</u>, 460 U.S. at 725-26.

[9] The <u>Gooden</u> defendants filed motions to dismiss, but the court treated them as motions for summary judgment. 954 F.2d at 964.

found that the § 1985(3) claim "was essentially an afterthought with little more to support it than the respective racial identities of the individuals involved." Id. at 970.

Plaintiffs argue that Simmons and Gooden are inapposite because they involved summary judgment, rather than a motion to dismiss.[10] However, other cases have addressed § 1985 claims on motions to dismiss, and those cases make clear that conclusory allegations of racial animus are insufficient, even at the pleading stage. For example, in Francis, which interpreted pleading standards post-Twombly and Iqbal, the Fourth Circuit stated:

> To plead a violation of § 1985, the plaintiffs must demonstrate *with specific facts* that the defendants were "motivated by a specific class-based, invidiously discriminatory animus to [ ] deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all." [Simmons, 47 F.3d at 1376.] Since the allegation in Count IV amounts to no more than a legal conclusion, on its face it fails to assert a plausible claim. See Iqbal, [556 U.S. at 679]; [Gooden, 954 F.2d at 969-70] (requiring plaintiffs alleging unlawful intent in conspiracy claims under § 1985 to "plead specific facts in a non-conclusory fashion to survive a motion to dismiss").

588 F.3d at 196-97 (emphasis added).

The entirety of Plaintiffs' allegations regarding racial animus amounts to two sentences: "Plaintiff Eric Jackson is an African-American citizen and resident of Durham County, North

---

[10] Plaintiffs also attempt to distinguish Gooden on other grounds, none of which have merit.

Carolina," (Compl. ¶ 2), and "[Defendants] engaged in the overt acts alleged herein in furtherance of that conspiracy, and, in doing so, were motivated by invidious racial animus against Jackson, an African-American citizen," (id. ¶ 117). Plaintiffs plead no specific facts, other than Jackson's race, to support the legal conclusion that Defendants were motivated by racial animus. Such a "[t]hreadbare recital[] of the elements of a cause of action" cannot survive a motion to dismiss. Iqbal, 556 U.S. at 678; see also Sewraz v. Nguyen, Civ. A. No. 3:08CV90, 2011 WL 201487, at *12 (E.D. Va. Jan. 20, 2011) (holding that plaintiff had failed to sufficiently allege racial animus in § 1985(2) claim when the only relevant facts plaintiff alleged were that plaintiff is Indian and defendant is Vietnamese-American). Consequently, the § 1985(2) claim will be dismissed.

**J.  Section 1986**

Plaintiffs have asserted a cause of action under § 1986, but a § 1986 claim is dependent upon the existence of a claim under § 1985. Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985). Because Plaintiffs' § 1985 claim fails, their § 1986 claim will also be dismissed. Jenkins v. Trs. of Sandhills Cmty. Coll., 259 F. Supp. 2d 432, 445 (M.D.N.C. 2003) (citing Trerice, 755 F.2d at 1085).

**K.  Obstruction of Justice**

The Officer Defendants contend that North Carolina common

law does not provide for a claim of obstruction of justice based on the actions of a police officer during a criminal proceeding. (Doc. 24 at 17-18.)  Plaintiffs respond that "North Carolina courts have never exempted police officers from liability for obstruction of justice."  (Doc. 28 at 21.)

> The Fourth Circuit addressed this exact question recently:
>
> Even though North Carolina courts have interpreted common-law obstruction of justice to include fabrication of evidence, Henry v. Deen, 310 S.E.2d 326, 334 (N.C. 1984), and destruction of evidence, Grant v. High Point Reg'l Health Sys., 645 S.E.2d 851, 855 (N.C. Ct. App. 2007), we have not found — and plaintiffs have not offered — any case from any jurisdiction recognizing a common-law obstruction of justice claim against a police officer for his actions relating to a criminal proceeding.

Evans v. Chalmers, 703 F.3d 636, 658 (4th Cir. 2012).  While Plaintiffs assert that the Officer Defendants' position "has no support in . . . common sense" (Doc. 28 at 21), the Fourth Circuit stated that "logic would seem to compel" just such a position, Evans, 703 F.3d at 658.

Plaintiffs cite several North Carolina cases in an effort to avoid Evans' clear language, but none of them concerns claims against police officers for actions taken in a criminal proceeding.  See In re Kivett, 309 S.E.2d 442 (N.C. 1983) (finding obstruction claim when state judge, who was under investigation, called another state judge and asked him to issue a restraining order preventing a grand jury from convening to

indict him); <u>State v. Wright</u>, 696 S.E.2d 832 (N.C. Ct. App. 2010) (finding obstruction claim when candidate for reelection to State House of Representatives filed false campaign finance reports); <u>Henry</u>, 310 S.E.2d at 326 (finding allegations that physicians falsified medical records sufficient to state conspiracy to obstruct justice claim); <u>Jones v. City of Durham</u>, 643 S.E.2d 631 (N.C. Ct. App. 2007) (finding obstruction claim when police officer's vehicle collided with a pedestrian and then officer misplaced or destroyed his patrol car's video recording of the accident). Plaintiffs have not offered any case in which a court has found a claim for obstruction of justice against a police officer for actions undertaken in a criminal proceeding. Thus, the claim will be dismissed.

### L. Negligent Supervision

The Officer Defendants assert that the North Carolina common-law tort of negligent supervision applies only to employers, and so the claim is only applicable to the City, not to Yount and Pearsall. (Doc. 24 at 18-19.) Plaintiffs state that, given the City's admission that the Officer Defendants were employed by the City and acting within the course and scope of their employment (Doc. 13 ¶ 62), the negligent supervision claims are duplicative; Plaintiffs do not object to their dismissal (Doc. 28 at 22). Thus, Plaintiffs' negligent supervision claims against Pearsall and Yount will be dismissed.

### III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that the Officer Defendants' motion to dismiss (Doc. 23) is GRANTED IN PART AND DENIED IN PART. Given the myriad claims and Defendants, the following summary outlines which claims will proceed against the Officer Defendants (all in their individual capacities):

Against all Officer Defendants:

    Count I (§ 1983 conspiracy to commit unlawful search and seizure);
    Count II (§ 1983 conspiracy to commit malicious prosecution);
    Count IV (§ 1983 bystander liability).

Additional claims against Brown, Stanhope, Van de Water, and Pearsall:

    Count I (§ 1983 search and seizure);
    Count II (§ 1983 malicious prosecution);
    Count III (§ 1983 concealment of evidence);
    Count XI (common-law malicious prosecution and conspiracy).

Additional claim against Pearsall:

    Count VI (§ 1983 supervisory liability).

All other claims against the Officer Defendants are DISMISSED WITH PREJUDICE. All claims against the "City Supervisors" are DISMISSED WITHOUT PREJUDICE.

The City is not a party to the current motion, so the claims against it are unchanged from the complaint, except that the City, as the real party in interest, is substituted for the

Officer Defendants in their official capacities in Counts I through IV.

/s/    Thomas D. Schroeder
United States District Judge

June 24, 2014